FILED
2005 Mar-23 AM 09:26
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# EASTERN DIVISION

| | |
|---|---|
| **D A UTILITIES, INC.,** | ] |
| **Plaintiff,** | ] |
| v. | ]  **CV-03-BE-2908-E** |
| **SUN BELT GENERAL CONTRACTORS, INC.,** *et al.*, | ] |
| **Defendants.** | ] |

**CONSOLIDATED WITH**

| | |
|---|---|
| **D A UTILITIES, INC.,** | ] |
| **Plaintiff,** | ] |
| v. | ]  **CV-03-BE-2909-E** |
| **SUN BELT GENERAL CONTRACTORS, INC.,** *et al*. | ] |
| **Defendants.** | ] |

## MEMORANDUM OPINION

Before the court is the Defendants' Motion to Compel Arbitration and to Dismiss, or in the Alternative, Stay the Proceedings (Doc. 15). For the reasons discussed below, by separate order the court grants the motion to compel and the motion to dismiss, denies the motion to stay, and dismisses the case. Further, the court denies the pending Motion for Partial Summary Judgment (Doc. 12) as moot.

**I. Facts and Procedural Background**

Plaintiff DA Utilities, Inc., a subcontractor, brings suit against Defendants Sun Belt

General Contractors, Inc., and Home Depot USA, Inc.  Sun Belt General accepted DA Utilities' bid for work two Home Depot stores in Alabama.  Sun Belt General sent DA Utilities written contracts for the work.[1]  *See* Doc. 15, Ex. A, *Fuller Affidavit*, ¶ 7, 14.  The written contracts contained arbitration agreements.  *See* Doc. 15, Ex. 1, *Contract 22701*, p. 7-8; Doc. 15, Ex. 4, *Contract 30901,* p. 8-9. Though DA Utilities did not sign the written contracts, it began work on the projects after Sun Belt sent the copies of the contracts.  Doc. 15, Ex. A, *Fuller Affidavit*, ¶ 7, 11, 14, 17. As the work progressed, the parties signed numerous "change orders" changing the terms of "the Contract" and referencing the written contracts specifically by date and number. *See* Doc. 15, Ex. A, *Fuller Affidavit*, ¶ 11, 17; Doc. 15, Ex. 2, *Jan. 16, 2003 Change Order*; Doc. 15, Ex. 5, *June 13, 2003 Change Order*.  In addition, DA Utilities submitted to Sun Belt applications for payment that referenced the written subcontracts by number.  *See* Doc. 15, Ex. A, *Fuller Affidavit*, ¶ 12, 18; Doc. 15, Ex. 3, *March 5, 2003 Subcontractor Application for Payment*; Doc. 15, Ex. 6, *May 23, 2003 Subcontractor Application for Payment*.  The payment applications, which were signed by DA Utilities and notarized, stated, "The undersigned Subcontractor hereby certifies that to the best of his knowledge, information and belief, the Work covered by this Application for Payment has been completed in accordance with the Contract Documents."  *See* Doc. 15, Ex. A, *Fuller Affidavit*, ¶ 12, 18 (emphasis added); Doc. 15, Ex. 3, *March 5, 2003 Subcontractor Application for Payment*; Doc. 15, Ex. 6, *May 23, 2003 Subcontractor Application for Payment*.

The underlying dispute concerns whether the Defendants fully paid DA Utilities for its

---

[1] Case number CV-03-BE-2908-E concerns work performed at the Sylacauga Home Depot Store; case number CV-03-BE-2909-E concerns work performed at the Jasper Home Depot Store.

work, and whether DA Utilities fully performed under the subcontracts. DA Utilities' complaint includes actions for breach of contract.

On May 14, 2004, the Defendants filed a motion to compel arbitration under the terms of the written contracts and the Federal Arbitration Act. Defendants argue that the arbitration clauses contained in the unsigned written contracts obligate DA Utilities to settle contractual disputes through binding arbitration. DA Utilities argues that Defendants have failed to meet their burden of proving the existence of a valid arbitration agreement and that the Defendants have not met their burden to show that the transactions between the parties involve interstate commerce.

## II. Standard of Review

The validity of an agreement to arbitrate is generally governed by the Federal Arbitration Act ("FAA" or the "Act"). *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991). The FAA "create[s] a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Congress enacted the FAA to implement a "liberal federal policy favoring arbitration agreements," *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983), and to "place arbitration agreements on the same footing as other contracts." *Gilmer*, 500 U.S. at 24. The FAA accomplishes these objectives primarily through its principal substantive provision, section two, requiring that a written provision in "a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Sections

three and four of the Act buttress section two's policy favoring enforcement of arbitration agreements by authorizing, respectively, stays of proceedings in federal district courts when an issue in the proceeding is referable to arbitration, 9 U.S.C. § 3,[2] and the issuance of court orders compelling arbitration when one party has failed or refused to comply with an arbitration agreement, 9 U.S.C. § 4.[3]

However, "the FAA's pro-arbitration policy does not operate without regard to the wishes of the contracting parties." *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 57 (1995). Indeed, the FAA is "at bottom" simply "a policy guaranteeing the enforcement of private contractual arrangements." *Mitsubishi Motors Corp. v. Soler Chrysler--Plymouth, Inc.*, 473 U.S. 614, 625 (1985). Accordingly, the FAA "does not require parties to arbitrate when they have not agreed to do so." *Volt Info. Sci's., Inc. v. Bd. of Tr. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989). "Nothing in the statute authorizes a court to compel arbitration of any issues, or by any parties, that are not already covered in the agreement." *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002).

Generally, the court determines whether a party is bound to arbitrate, and what issues it must arbitrate, by applying ordinary state contract-law principles to the language of the parties'

---

[2]The relevant portion of 9 U.S.C. § 3 states:

If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had. . . .

[3]9 U.S.C. § 4 states in pertinent part, "A party aggrieved by the alleged ... refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court ... for an order directing that such arbitration proceed in the manner provided for in such agreement."

contract. *See First Options of Chicago v. Kaplan*, 514 U.S. 938, 943, 944 947 (1995); *AT & T Tech., Inc. v. Communications Workers of America*, 475 U.S. 643, 649 (1986). However, the FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Memorial Hosp.*, 460 U.S. at 24-25.

The parties' burdens on a motion to compel arbitration resemble the parties' burdens on a motion for summary judgment. *See Kenworth of Birmingham, Inc. v. Langley*, 828 So. 2d 288, 290 (Ala. 2002); *Allied-Bruce Terminix Co's. v. Dobson*, 684 So. 2d 102,108 (Ala. 1995) (citing *Par-knit Mills, Inc. v. Stockbridge Fabric Co.,* 636 F. 2d 51, 54 n.9 (3rd Cir. 1980)). A party seeking to compel arbitration must proffer a contract containing an arbitration agreement and demonstrate that the underlying contract evidences a transaction affecting interstate commerce. *Kenworth of Birmingham*, 828 So. 2d at 290.  If the party seeking to compel arbitration establishes the above-referenced elements, then the burden shifts to the opposing party to present evidence that the arbitration agreement is not valid or that it does not apply to the dispute in question. *Id.*; *see also Chastain v. Robinson-Humphrey Co.*, 957 F.2d 851, 854-55 (11th Cir. 1992) (holding that, on a motion to compel arbitration, to create a genuine issue as to the existence of an agreement to arbitrate because a party never signed the arbitration agreement, the party must unequivocally deny that the agreement was ever made and "must substantiate the denial of the contract with enough evidence to make the denial colorable").

### III. Discussion

Although DA Utilities did not sign the actual contract, Defendants have shown that the

parties have contracts that contain written arbitration agreements.  Under Alabama law,

> the purpose of a signature on a contract is to show mutual assent; however, the existence of a contract may also be inferred from other external and objective manifestations of mutual assent. Unless a contract is required by a statute to be signed (the FAA contains no such requirement)...it need not be signed by the party against whom enforcement is sought, provided it is accepted and acted upon....  Conduct of one party from which the other may reasonably draw the inference of assent to an agreement is effective as acceptance.

*Ex parte Rush*, 730 So. 2d 1175, 1177-78 (Ala. 1999).

DA Utilities manifested external, objective indications of its assent to the written contracts by beginning work on the projects after Sun Belt sent it copies of the written subcontracts; by signing numerous "change orders" changing the terms of "the Contract" and referencing the written contracts specifically by date and number; by submitting signed and notarized applications for payment that referenced the written subcontracts by number and that stated that "[t]he undersigned Subcontractor hereby certifies that to the best of his knowledge, information and belief, the Work covered by this Application for Payment has been completed in accordance with the Contract <u>Documents</u>." *See*  Doc. 15, Ex. A, *Fuller Affidavit*, ¶ 7, 11, 12, 14, 17, 18 (emphasis added); Doc. 15, Ex. 2, *Jan. 16, 2003 Change Order*; Doc. 15, Ex. 5, *June 13, 2003 Change Order*; Doc. 15, Ex. 3, *March 5, 2003 Subcontractor Application for Payment*; Doc. 15, Ex. 6, *May 23, 2003 Subcontractor Application for Payment*.  Sun Belt would have been reasonable in drawing an inference of assent to the written contracts from DA Utilities's conduct.  Therefore, DA Utilities' manifest assent to the written contracts is effective as acceptance, and the parties have written contracts containing arbitration agreements.  *See Ex parte Rush*, 730 So. 2d 1175, 1177-78 (Ala. 1999).

In addition to providing evidence of written arbitration agreements, Defendants have also demonstrated that the parties' transactions involve interstate commerce. Defendants have shown that DA Utilities, an Alabama corporation, contracted with Sun Belt, a Georgia corporation, to work on building stores for Home Depot, another Georgia Corporation, in Jasper and Sylacauga, Alabama. *See Defendants' Reply*, Doc 23, p.9; Doc. 23, *Ross Affidavit*, Ex. 1, ¶ 2; *Plaintiffs Complaints*, Doc. 15, Exs. B & C. Defendants have also shown that, in performing their work on the Home Depot stores in Alabama, Sun Belt and DA Utilities both used equipment manufactured in other states and foreign countries and used materials produced outside Alabama. Doc. 15, Ex. A, *Fuller Affidavit*, ¶ 19. Thus, Defendants have shown that the parties' transactions involve interstate commerce. *See Citizen's Bank v. Alafabco, Inc.*, 539 U.S. 52, 56-57 (2003) (holding that the FAA'a "involving commerce" language "signal[s] the broadest permissible exercise of Congress' Commerce Clause power," and reiterating that "Congress' Commerce Clause power may be exercised in individual cases without showing any specific effect upon interstate commerce if in the aggregate the economic activity in question would represent a general practice ... subject to federal control.")

Defendants have shown that the parties had written arbitration agreements and that the parties' transactions involve interstate commerce. On a motion to compel arbitration under the FAA, once the moving party has shown the existence of a written contract and that the parties' transaction involves interstate commerce, the burden shifts to the opposing party to present evidence that the arbitration agreement is not valid or that it does not apply to the dispute in question. *Kenworth of Birmingham, Inc. v. Langley*, 828 So.2d 288, 290 (Ala. 2002); *see also Chastain v. Robinson-Humphrey Co.*, 957 F.2d 851, 854-55 (11th Cir. 1992) (holding that, on a

motion to compel arbitration, to create a genuine issue as to the existence of an agreement to arbitrate because a party never signed the arbitration agreement, the party must unequivocally deny that the agreement was ever made and "must substantiate the denial of the contract with enough evidence to make the denial colorable"). DA Utilities has produced no evidence and no legal authority to carry its burden.

Because DA Utilities has provided no evidence or legal authority whatsoever to support its arguments that the bid it submitted to Sun Belt constituted the parties' contract, and that the written contracts were merely ineffective attempts to change the terms of the bid, the court cannot consider these arguments. The only evidence before the court indicates that Sun Belt did not unconditionally accept DA Utilities' bids or that the bids in any way became binding contracts that governed the parties' entire relationship. Rather, as discussed above, the evidence before the court demonstrates that DA Utilities accepted the written contracts Sun Belt sent to it after accepting its bid, and that the parties intended those written contracts to govern their relationship.

Furthermore, DA Utilities' arguments regarding the involvement of interstate commerce are legally and factually unsupported and meritless. DA Utitilies argues that the "Defendants present no evidence that the transactions between DAU, Sun Belt, and Home Depot did, in fact, involve[] interstate commerce." *Plaintiff's Opposition*, Doc. 22, p. 5. However, as discussed above, Defendants did submit evidence that the parties' relationship involved interstate commerce. *See Defendants' Motion*, Doc. 15, p. 9, *and supporting evidence*, Doc. 15, Ex. A, *Fuller Affidavit*, ¶ 19. Though Defendants' evidence is not voluminous, it is sufficient to establish that the parties' relationship involves interstate commerce, and to thereby trigger DA

Utilities' burden to contradict the Defendants' arguments with its own evidence and legal authority.  DA Utilities has not attempted to meet that burden.

**IV.  Conclusion**

Because Defendants have demonstrated that the parties' have written contracts that contain arbitration clauses and that the contracts evidence a transactions involving commerce, the FAA requires the court to uphold the parties' arbitration agreement and order the parties to submit their disputes to arbitration.  Accordingly, the court grants the motion to compel and the motion to dismiss, denies the motion to stay, and dismisses the case.  Further, the court denies the pending Motion for Partial Summary Judgment (Doc. 12) as moot.

A separate order will be entered contemporaneously with this memorandum opinion.

DONE and ORDERED this 18th day of March, 2005.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE